# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JACK LEBEAU and SHARON LEBEAU, husband and wife, | : : : | CIVIL ACTION |
|  | : | NO. 05-5876 |
| Plaintiffs, | : : |  |
| v. | : : |  |
| OPPENHEIMER & CO., INC., formerly known as FAHNESTOCK & CO., INC., and THE ESTATE OF JEFFREY S. VIZAK, | : : : : | |
| Defendants. | : : |  |

DuBOIS, J.                                                    JUNE 23, 2006

## M E M O R A N D U M  &  O R D E R

### MEMORANDUM

Presently before the Court is plaintiffs' Petition to Vacate Arbitration Award, and defendants' Cross-Petition to Confirm Arbitration Award. Plaintiffs seek to vacate an arbitration decision denying their claims. Defendants seek to confirm that arbitration decision. For the reasons set forth in this Memorandum, the Petition to Vacate Arbitration Award is denied, and the Cross-Petition to Confirm Arbitration Award is granted.

## I.    BACKGROUND

Plaintiff Dr. Jack Lebeau ("Dr. Lebeau") is 62 years old and disabled. Pl. Mem. 3. Plaintiff Sharon Lebeau ("Mrs. Lebeau") is 60 years old, and is Dr. Lebeau's wife and primary care-giver. Id.

Plaintiffs allege that they were solicited to open a securities account with Mrs. Lebeau's

cousin, Jeffrey Vizak. Id. Vizak was purportedly a successful "Senior Vice President" of an investment firm, Fahenstock & Company, Inc. ("FCI"), which subsequently changed its name to Oppenheimer & Co. ("Oppenheimer"). Id. Vizak allegedly promised that he could safely and responsibly manage plaintiffs' life savings. Id.

Plaintiffs opened three securities accounts with FCI. Pl. Ex. 12, "Jack Lebeau's IRA Account"; Pl. Ex. 13, "Lebeaus' Joint Account"; Pl. Ex. 14, "Lebeaus' Joint Account." According to plaintiffs, from December 1998 through April 2002, Vizak largely controlled the plaintiffs' accounts and made many transactions without plaintiffs' prior authorization. Pl. Mem. 3-4. As a result, plaintiffs allege that they lost $ 825,186. Pl. Ex. 20, "Jack and Sharon LeBeau: Profit and Loss."

According to defendants, plaintiffs used their FCI accounts to knowingly pursue a growth-focused investment strategy, although plaintiffs knew that this strategy could result in significant losses. Def. Mem. 1. Defendants argue that plaintiffs pursued this strategy in part to finance their lifestyles, spending an average $ 33,000 per month from January 1999 to July 2002, even as their accounts began decreasing in value in 2000 and beyond. Id. at 1-2. It is alleged that plaintiffs spent all of the money in their FCI accounts by 2004. Id. at 2.

On February 16, 2003, Vizak passed away due to an "overdose of medications." Pl. Ex. 4, "Certificate of Death." His autopsy stated that "he ha[d] a long history of psychiatric problems and a positive field test for opiates." Id. At the time of his death, at least eight other customers had initiated investment-related complaints against him. Pl. Mem. 5. Following Vizak's death, plaintiffs also learned that Vizak was arrested in 1999 for possession of controlled substances, forgery, and theft by deception. Id.; Pl. Ex. 5.

On August 19, 2002, plaintiffs filed a Statement of Claim ("Claim") before the National Association of Securities Dealers, Inc. ("NASD"). Pl. Ex. 3, "Statement of Claim." The Claim was filed with the NASD pursuant to the terms of the Lebeaus' account agreements, which required that all controversies between the parties be submitted to arbitration. Def. Cross-Petition for Confirmation of Arbitration Award. ¶ 2. The Claim alleged, inter alia, misrepresentations, misstatements of material fact, suitability, churning, violations of NASD rules, violations of the Securities Exchange Act of 1934, Section 10(b) and SEC Rule 10b-5 as promulgated thereunder, breach of fiduciary duty, and failure to supervise. Pl. Ex. 3, "Statement of Claim"; Pl. Ex. 1, "Award: NASD Dispute Resolution." FCI and Vizak's Estate denied the allegations made in the Claim and asserted, inter alia, the following defenses: that they acted in good faith; that the Lebeaus failed to state a claim upon which relief may be granted; that the Lebeaus' claims were barred in whole or in part by the doctrines of contributory and comparative negligence; that the Lebeas' claims were barred by the applicable statutes of limitations, estoppel, waiver, and ratification; failure to mitigate losses; and authorization. Pl. Ex. 1, "Award: NASD Dispute Resolution."

Arbitration was held in Philadelphia, Pennsylvania, on September 20, 2004; March 8, 9, and 10, 2005; and August 22 and 23, 2005. Pl. Ex. 1, "Award: NASD Dispute Resolution." At the commencement of the proceedings, plaintiffs, through their counsel, confirmed their acceptance of the panel of three arbitrators. Tr. Sept. 20, 2004, at 3-4. When the arbitration reconvened in March 2005, plaintiffs reconfirmed their approval of the panel. Tr. Mar. 8, 2005, at 4. At the conclusion of the arbitration proceedings, plaintiffs, again through counsel, stated that they had received a fair opportunity to be heard, noting only that they were unable to

3

introduce some evidence. Thereafter, on August 31, 2005, the arbitration panel entered an award, denying the Lebeaus' claims in their entirety. Pl. Ex. 1, "Award: NASD Dispute Resolution."[1]

The Lebeaus filed the instant Petition to Vacate Arbitration Award in federal court on November 8, 2005.

## II.    LEGAL STANDARDS

The party moving to vacate an arbitration award bears the burden of proof. Grosso v. Salomon Smith Barney, Inc., 2003 U.S. Dist. Lexis 20208 (E.D. Pa. Oct. 24, 2003). Where a party has agreed to arbitrate a dispute, the court will set the arbitration decision aside "only in very unusual circumstances." First Options v. Kaplan, 514 U.S. 938, 942 (1995). Pursuant to the Federal Arbitration Act ("FAA"), a district court may vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[1] Specifically, the arbitration panel concluded:

After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

> 1. Claimants' claims are denied in their entirety;
> 2. All claims for punitive damages and attorneys' fees are denied in their entirety;
> 3. The parties shall bear their respective costs, including attorneys' fees, except as Fees are specifically addressed below; and
> 4. Any and all relief not specifically addressed herein is denied in its entirety.

Pl. Ex. 1, "Award: NASD Dispute Resolution," at 2-3.

9 U.S.C. § 10(a). In addition, a district court may vacate an arbitration award if it is in "'manifest

disregard of the law.'" First Options v. Kaplan, 514 U.S. 938, 942 (1995) (citing Wilko v. Swan,

346 U.S. 427, 436-37 (1953)).

A court's review of an arbitration award "is narrow in the extreme." Amalgamated Meat

Cutters & Butcher Workmen v. Cross Bros. Meat Packers, Inc., 518 F.2d 1113, 1121 (3d Cir.

1975); see also Swift Indus. v. Botany Indus., 466 F.2d 1125, 1130 (3d Cir. 1972) (stating that

the "court's function in confirming or vacating a commercial [arbitration] award is severely

limited."). Indeed, "the terms of the arbitral award will not be subject to judicial revision unless

they are 'completely irrational.'" Mutual Fire, Marine & Inland Ins. Co. V. Norad Reinsurance

Co., 868 F.2d 52 (3d Cir. 1989) (quoting Swift Indus, 466 F.2d at 1131).

It is not proper for a Court to "sit as the panel did and reexamine the evidence." Mutual

Fire, Marine, & Inland Ins. Co. v. Norad Reins. Co., Ltd., 868 F.2d 52, 56 (3d Cir. 1989). Errors

in the arbitrators' factual findings or interpretations of the law do not justify a Court's review or

reversal on the merits. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36-38

(1987); Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 62 (3d Cir. 1986) (citations

omitted); Whitlock Packaging Corp. v. Precision Diversified Sys., 59 F. Supp. 2d 384, 390

(D.N.J. 1998). A Court may not overrule an arbitrator "simply because it disagrees" with the

arbitrator's interpretation of the law. United Transp. Union Local 1589 v. Suburban Transit

Corp., 51 F.3d 376, 379 (3d Cir. 1995) (quoting News America Publications, Inc. v. Newark

Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990)). Even where the Court is

convinced that the arbitrator has committed serious error, the award must be enforced unless

there is "absolutely no support at all in the record justifying the arbitrator's determinations." Id.;

see also Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of America, 896

F.2d 745, 748 (3d Cir. 1990) (even where the support is "slender," if the record reveals "some

basis for the arbitrator's conclusion . . . the inquiry is over."); Roberts & Schaefer Co. v. Local

1846, United Mine Workers, 812 F.2d 883, 885 (3d Cir. 1987) ("even when the award was

dubious, and the result one that we would not have reached had the matter been submitted to the

court originally, we have upheld the arbitrator's decision"); Newark Morning Ledger Co. v.

Newark Typographical Union, 797 F.2d 162, 165 (3d Cir. 1986) (our "strict standard means that

a reviewing court will decline to sustain an award 'only in the rarest case'"); Coltec Indus. v.

Elliott Turbocharger Group, Inc., 1999 U.S. Dist. LEXIS 13684, *4 (E.D. Pa. Sept. 9, 1999)

("The court need only find a 'colorable justification' to confirm the award.").

## III.   DISCUSSION

This case is not the rare case in which judicial revision of an arbitration award is

appropriate. Plaintiffs argue that the arbitration decision should be vacated because:

1.   The award was procured by corruption, fraud, or undue means.

2.   There was evident partiality or corruption in the arbitrators.

3.   The arbitrators were guilty of misconduct in failing to abide by the NASD Code of Arbitration Procedure, as agreed upon by Petitioners, in connection with the submission of this matter to NASD Arbitration.

4.   The arbitrators were guilty of misconduct in refusing to permit discovery, and as a result, refusing to hear evidence pertinent and material to the controversy; and other misbehavior by which the rights of the Petitioners have been prejudiced.

5.   The award was rendered against the great weight of the evidence, and in so doing the arbitrators evinced a manifest disregard of the law.

See Pl. Pet., at 1-2. In support of these allegations, plaintiffs raise a litany of specific claims,[2]

which largely fall into two categories: disputes over discovery, and allegations that each of the

three arbitrators on the panel engaged in misconduct or favoritism toward the defendants.

Defendants respond that plaintiffs' allegations do not warrant vacating the arbitration

decision. The Court agrees. After reviewing all the submissions in this case, including the

arbitration transcripts, the Court concludes that none of the claims raised by the Lebeaus warrants

judicial revision of the arbitration award. The arbitration decision was adequately supported by

the record before the arbitration panel:

First, the Lebeaus' sole expert witness before the arbitration panel was an accountant who

_____

[2] These claims include, inter alia: (1) Plaintiffs did not have the opportunity to select their arbitrators. Pl. Mem. 8. (2) The Panel Chair, Earl L. Cahan, was 94 years old in August 2005, and had trouble reading the NASD Hearing Script. Id. at 9. (3) Arbitrator Martin Kobak is a Senior Vice President of Citicorp Global Capital Markets, formerly known as Salomon Smith Barney. Plaintiffs' counsel is adverse since he has prosecuted at least ten suits against Salomon Smith Barney. Kobak had a duty to disclose this alleged conflict of interest, but failed to do so, thus casting doubt on the impartiality of the panel. Pl. Mem. 9-10, 27. (4) Arbitrator Cynthia Plishtin had ex parte contacts with respondents' branch manager, Mr. Lange, which violated her duties as an arbitrator. Id. at 11, 18-19. In addition, her groaning, sighing, and grimacing, as well as her alleged improper handling of the evidence, showed Plishtin's partiality toward defendants. Id. at 12, 31. (5) Vizak was not properly supervised, and FCI should not have placed him in a position of trust. Documents were introduced into evidence showing that Mr. Lange, in connection with his supervision of Mr. Vizak, signed blank new account forms with internally inconsistent investment objectives, and incomplete and wrong information. Id. at 13-14. This shows that FCI did not properly manage plaintiffs' accounts. Moreover, petitioners were told that Vizak was "on vacation," when he was actually away for repeated drug rehabilitation and psychiatric treatment. Id. at 16-17. Further, Vizak's August 1999 and October 1999 felony drug and forgery arrests were not reported to securities regulators, as required by law. Id. at 14. (6) Petitioners presented evidence that the decline in the stock market was in fact not the cause of their losses. Id. at 15-16. (7) Petitioners were denied meaningful discovery of certain highly important and highly material aspects of their claim, which denied them a fundamentally fair hearing. Id. at 20, 24-25. (8) The Panel refused to abide by and enforce the ground rules that the parties had agree to, particularly with respect to discovery. Id. at 23.

simply testified regarding the profits and losses that the Lebeaus' sustained in their FCI accounts. Tr. Mar. 9, 2005, at 401-447. This expert witness did not testify on the issues of suitability, churning, or the other claims asserted.

Second, the principal witness in support of the Lebeaus' was Dr. Lebeau, who testified for over three days. He testified regarding, inter alia, the suitability of the petitioners' investments at FCI, the allegedly fraudulent statements that Vizak made to petitioners, their alleged lack of knowledge with regard to the investments, and Vizak's alleged unauthorized purchase and sale of investments. On the final day of arbitration, the Lebeaus' own counsel declared Dr. Lebeau to be incompetent to testify. Tr. Aug. 23, 2005, at 32-36.[3]  This statement undoubtedly undermined the

---

[3] The exchange proceeded as follows between Nicholas J. Guiliano, counsel for the Lebeaus, and William E. Mahoney, counsel for the respondents:

Guiliano:     For the record, Mr. Chair, at this time I'd like to cease the questioning of Dr. Lebeau. In my professional opining [sic], I don't feel he's competent to testify. . . . I don't think there's anything about his testimony that's credible or that he's said anything that's false. . . . ask him a question and he gives you one answer, and then he give[s] you a completely different answer two seconds later, because he really doesn't remember. He's got some sort of a psychological problem where he's unable to remember things. He's unable to, I believe, give competent testimony about what he knew and what he did. That means that I can't ethically ask anymore questions.

Mahoney:      If I understand correctly from Counsel, he just proffered that Dr. Lebeau, after now four full days of sitting here before this panel and presenting testimony before this panel that Dr. Lebeau is now incompetent to give testimony, and effectively you should disregard everything that Dr. Lebeau said, because not only is he incompetent this morning, but in Mr. Guiliano's estimation, presumably he has been incompetent since day one. I don't know if that's true or not. . . . [I]f you look at [Dr. Lebeau's] resume, it's replete . . . with instances of Dr. Lebeau presumably being competent enough to do very many things. . . . So forgive me if I sound a little bit skeptical here, but I don't know any other way to put it. It just strikes me as a ploy. . . . I will request that the panel . . . [enter] an order dismissing this claim. You cannot have it both ways. You can't present a claim

credibility of Dr. Lebeau, whose testimony was critical to the Lebeaus' case. The panel, through Arbitrator Cynthia Plishtin, responded to the declaration of incompetency by stating to the parties that "both sides can rest assured that this panel will make a judgment as we sit here as we see fit." Tr. Aug. 23, 2005, at 37.

Third, the defendants provided ample evidence to the arbitration panel to support a finding of no liability. The defendants argued that the petitioners' investments at FCI were suitable for them, and that the petitioners were knowledgeable investors. In support thereof, defendants offered evidence to show that, in 1997, the Lebeaus divided their assets between their investment accounts at FCI and another investment firm to avoid, in Dr. Lebeau's words, "putting [his] eggs in one basket." Tr. Mar. 9, 2005, at 521. According to Dr. Lebeau, their advisor at the other investment firm informed them about which investments "were safe, secure things." Tr. Mar. 9, 2005, 525. From 1997 to 1999, the Lebeaus diversified their holdings at FCI, Tr. Mar. 10, 2005, at 64. In 1997, the Lebeaus chose their own financial advisor, Arthur Karafin, at FCI, Tr. Mar. 9, 2005, at 570-602, but fired him in 1999 and chose Vizak alone to be their financial advisor. Tr. Mar. 9, 2005, at 629-32; Tr. Mar. 10, 2005, at 34, 39-40. In 1999, the value of the Lebeaus' accounts at FCI increased in value by hundreds of thousands of dollars. Tr. Mar. 10, 2005, at 15, 58-59. Moreover, Dr. Lebeau acknowledged that he received written confirmations of every purchase or sale of a security within days of the transaction, and that he received and reviewed monthly account statements reflecting the account value, the individual holdings, gains and losses, margin debit, and margin interest. Tr. Mar. 9, 2005, at 380; Tr. Mar.

---

through a witness, and presumably because you're unhappy with the testimony so far at the, 11th hour suggest the witness is now incompetent.

10, 2005, at 9-10, 12-13, 61-62; Tr. Aug. 22, 2005, at 52.

In light of the Lebeaus' failure to present any expert testimony on issues central to their claims, their decision to inform the panel that their key witness was incompetent, and the ample evidence that respondents provided to support a finding of no liability, it was reasonable for the arbitration panel to conclude that the petitioners had not proved their case. The Lebeaus' arguments to the contrary are insufficient to warrant vacatur of the arbitration decision. The Court addresses their arguments in brief.

The Lebeaus' principal argument is that the arbitration panel denied them meaningful discovery, which resulted in a fundamentally unfair hearing. The Lebeaus sought, inter alia, exception reports, commission runs, internal audits, special supervisory procedures, and documents relating to FCI's supervision of Vizak, which they claim were required to be produced pursuant to the NASD Guide. Plaintiffs complain that the arbitration panel failed to compel defendants to produce these documents. Defendants respond by asserting that (i) plaintiffs received all relevant documents and information sufficient to present their claims; (ii) the arbitration panel properly considered and ruled on the various motions to compel document production; and (iii) plaintiffs were not prejudiced in any way by the discovery rulings.

"In an arbitration case a court cannot act as a legal screen to comb the record for technical errors in the receipt or rejection of evidence by arbitrators, who in most cases are laymen." Newark Stereotypers' Union v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968), cert. denied, 393 U.S. 954 (1968). "Only the most egregious error which adversely affects the rights of the party constitutes 'misconduct in refusing to hear evidence pertinent and material to

the controversy.'" <u>Grosso v. Salomon Smith Barney, Inc.</u>, 2003 U.S. Dist. Lexis 20208 (E.D. Pa.

Oct. 24, 2003) (quoting <u>Hunt v. Mobil Oil Corp.</u>, 654 F. Supp. 1487, 1511 (S.D.N.Y. 1987)

(citing 9 U.S.C. § 10(a)(1)). The Court concludes that none of the plaintiffs' allegations even

approach the level of egregiousness required for the vacatur of the arbitration panel decision.

The Lebeaus further argue that each of the three arbitrators on the panel engaged in some

form of misconduct or demonstrated bias in favor of the defendants. The most significant of the

allegations of misconduct and bias are as follows: the Panel Chair, Earl L. Cahan, had trouble

reading the NASD Hearing Script; Arbitrator Martin Kobak failed to disclose an alleged conflict

of interest caused by his employment at Citicorp Global Capital Markets, formerly known as

Salomon Smith Barney; and Arbitrator Cynthia Plishtin groaned, sighed, and grimaced during the

hearing, and had <u>ex parte</u> contacts with the respondents' branch manager. The Lebeaus'

remaining allegations of misconduct[4] do not warrant any relief and require no discussion.

The Court concludes that three of the Lebeaus' significant objections – Mr. Cahan's

alleged trouble reading, Mr. Kobak's alleged failure to disclose a conflict of interest, and Ms.

Plishtin's alleged groaning, sighing, and grimacing – were known to the Lebeaus before the

arbitration decision was rendered. Nearly three months before arbitration commenced, the

Lebeaus were advised of Mr. Kobak's employer; that information was disclosed in his Arbitrator

Profile, which was transmitted to plaintiffs' counsel on June 24, 2004. Def. Ex. N. During

---

[4] The Lebeaus complain about Mr. Cahan's age (he was 94 years old in August 2005); Mr. Cahan's request that the hearing break at 12:30 p.m. on August 23, 2005 for lunch; Ms. Plishtin's qualifications to be an arbitrator (noting that she remained at home for several years raising children); and, Ms. Plishtin's instruction that plaintiffs' counsel not introduce personal or confidential information of other FCI clients.

arbitration, the Lebeaus would have witnessed any difficult that Mr. Cahan might have had reading, and any groaning, sighing, or grimacing that Ms. Plishtin might have done. Although the Lebeaus knew of these three objections, they chose not to raise them before the arbitration decision was rendered. Instead, on the first day of the arbitration hearing, the Lebeaus accepted the panel. Tr. Sept. 20, 2004, at 3-4 ("Claimant's [sic] counsel accepts the panel as composed."). When the panel reconvened in March 2005, the Lebeaus reconfirmed that they accepted the panel. Tr. Mar. 8, 2005, at 4 (The Chair: "Do the parties accept this panel's composition?"; Mr. Guiliano: "Claimant does, sir."). At the conclusion of the hearing, they stated that "[other than] the evidence we didn't get, we feel this panel gave us more than a fair opportunity to be heard." Tr. Aug. 23, 2005, at 207.[5]

It is well settled that a party may not await an adverse award before asserting objections on grounds of which it had knowledge prior to the award. Dean Witter Reynolds, Inc. v. Bork, 1991 U.S. Dist. Lexis 11907, *9 (E.D. Pa. Aug. 21, 2001) (citing Graphic Arts Intern. Union, Local 97-B v. Haddon Craftsman, Inc., 489 F. Supp. 1088, 1093 (M.D. Pa. 1979)). "This rule of law ensures the finality and economic benefits of arbitration by preventing parties from making post-arbitration supplements to the record which prolong the dispute resolution process." Dean Witter Reynolds, 1991 U.S. Dist. Lexis 11907, *9-*10.  Thus, the Lebeaus' "belated cry of 'bias' cannot now form a basis for setting aside the award; [their] silence constituted a waiver" of their objections to Mr. Cahan's alleged trouble reading, Mr. Kobak's alleged conflict of interest, and Ms. Plishtin's alleged groaning, sighing and grimacing. Graphic Arts, 489 F. Supp. at 1093

---

[5] The reference to "the evidence that we didn't get" refers to discovery that the plaintiffs unsuccessfully sought during the arbitration process.

(citing <u>Cook Industries Inc. v. C. Itoh & Co.</u>, 449 F.2d at 107-08)).

Turning now to the Lebeaus' final complaint which warrants discussion, the Court concludes that the record is not clear on the issue of when the Lebeaus learned of Ms. Plishtin's alleged <u>ex parte</u> contacts with the respondents' branch manager. Assuming <u>arguendo</u> the veracity of this claim, the Court concludes that it does not matter when the Lebeaus learned of the <u>ex parte</u> contacts because these contacts simply do not rise to the level of impropriety required for vacating the arbitration award in this case.

In short, none of the Lebeaus' claims warrant vacatur of the adverse arbitration decision entered against them. The arbitration panel's decision was reasonably grounded in the evidence presented to the panel; it is not this Court's role to revisit the arbitration decision.

## IV.  CONCLUSION

For the reasons set forth above, the plaintiffs' Petition to Vacate Arbitration Award is denied, and the defendants' Cross-Petition to Confirm Arbitration Award is granted.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **JACK LEBEAU and SHARON LEBEAU,**<br>**husband and wife,** | : | **CIVIL ACTION** |
|  | : |  |
|  | : | **NO. 05 - 5876** |
| **Plaintiffs,** | : |  |
| **v.** | : |  |
|  | : |  |
| **OPPENHEIMER & CO., INC., formerly** | : |  |
| **known as FAHNESTOCK & CO., INC., and** | : |  |
| **THE ESTATE OF JEFFREY S. VIZAK,** | : |  |
|  | : |  |
| **Defendants.** | : |  |
|  | : |  |

# O R D E R

      **AND NOW**, this 23rd day of June, 2006, upon consideration of the plaintiffs' Petition to

Vacate Arbitration Award (Document No. 1, filed November 8, 2005), the defendants' Response

to Petition to Vacate and Cross-Petition to Confirm Arbitration Award (Document No. 4, filed

January 4, 2006), and the Petitioners' Opposition to Respondents' Cross Motion to Confirm

Arbitration Award (Document No. 6, filed January 19, 2006), for the reasons set forth in the

attached Memorandum, **IT IS ORDERED** as follows:

      1.     The plaintiffs' Petition to Vacate Arbitration Award (Document No. 1, filed

           November 8, 2005) is **DENIED**.

      2.     The defendants' Cross-Petition to Confirm Arbitration Award (Document No. 4,

           filed January 4, 2006) is **GRANTED**.

      **IT IS FURTHER ORDERED** that the Clerk of Court shall **MARK** the case **CLOSED**

for **STATISTICAL PURPOSES**.

                                **BY THE COURT:**
                                **JAN E. DUBOIS, J.**

                        _____

                         **/s/**     **JAN E. DUBOIS, J.**

15